# IN THE MATTER OF M. D. MONSARRAT, a Bankrupt.

## March 30, 1911.

*Bankruptcy—Sale of property—Inadequacy of price—Appraisal, necessity of—Disposition of property on setting aside sale:* While the want of an appraisal does not necessarily invalidate a sale by a trustee of property of a bankrupt's estate, and a sale for a reasonable price, without appraisal may be confirmed, a private sale without appraisal for one hundred dollars, though ordered by the referee, of property which was worth five hundred dollars and which would probably have brought that sum at public auction, not allowed to stand unless the purchaser pays to the trustee the difference in value, with interest.

As the alternative, the purchaser may return the property and have back the purchase price with interest, the property to be sold by the trustee at public auction after due advertisement; *provided,* that if the funds of the estate shall be sufficient to pay the claims allowed and proper costs and expenses of administration, the property to be returned to the bankrupt.

*Same—Sale of property—Notice to creditors:.* Under the law requiring that notices to creditors "shall be addressed as specified in the proof of debt," notice sent to a creditor whose name and address appear in the bankrupt's schedule of liabilities, is not notice to an assignee of the creditor, whose proof of claim, containing his address, was duly filed with the referee; unless the notice sent to the assignor reaches the assignee.

*Same—Administration of estate—Collection of assets—Trustee's duty:* The trustee's failure to use proper efforts to realize upon collectable debts due the estate, subjects him to the risk of being surcharged to the extent of their value less reasonable costs and expenses of collection.

*Same—Administration of estate—Payment of taxes—Trustee's duty:* The trustee's failure to pay taxes, when having in hand sufficient funds, by reason whereof the estate is subjected to interest and penalties, renders him liable to be surcharged to the extent of such interest and penalties.

*In Bankruptcy:* Petition to set aside sale and to review accounts of trustee.

*C. F. Peterson,* Attorney for the Bankrupt.
*E. C. Peters,* Attorney for A. F. Cooke.
*Thompson, Clemons & Wilder,* Attorneys for the Trustee.

DOLE, J. The bankrupt has filed a petition against the approval of the accounts of the trustee, alleging neglect of his

41—D

duties on the part of the trustee, mismanagement of the estate and illegal transactions, consisting of failure to collect debts due the bankrupt's estate whereby they have become outlawed, and delay in administration causing unnecessary expense to accrue in the way of taxes due the government, and repeated annual premiums for surety on the trustee's bond, and further alleging the sale of one hundred shares of the Palolo Land & Improvement Company, Limited, for one hundred dollars to A. F. Cooke at private sale without appraisal having been made of such stock and without notice of such sale to the petitioner or to the creditor holding the majority in amount of claims against the estate and without any order of court authorizing such sale and without reporting such sale to the court or the referee for confirmation, or to the creditors of the bankrupt, until over a year after the same was made, and without depositing the proceeds thereof in the government depository or drawing therefrom by checks countersigned by the referee until after such sale was reported to the referee as aforesaid; and the petitioner alleges that the said price for such property was grossly inadequate and that the property was worth at that time not less than one thousand dollars; but that the trustee was misled by false representations of the said Cooke to the effect that the stock was not worth more than one hundred dollars; and that he has offered the creditors, the trustee, the referee and the said A. F. Cooke, to pay the debts of the said bankrupt estate with costs and expenses on condition that the assets of the estate be vested in him, and was able to perform his part of such offer, which offer was declined, and that he still offers and is able to pay such debts, costs and expenses in consideration of the return to him of the said one hundred paid up shares of stock in the said Palolo Land & Improvement Company, Limited; and prays that the said trustee and the said A. F. Cooke be cited to appear and show cause why an order should not be made setting aside the said sale, and that the said stock be returned to the trustee or to the petitioner; that the trustee be not discharged until he has properly adminis-

terod the estate, and that he be surcharged with the amount of debts due the estate not collected.

The said A. F. Cooke appeared in answer to a summons and later became, by consent, of record as representing the Palolo Land & Improvement Company, Limited.

The answer of the trustee admits the sale of stock, referred to in the complaint, at private sale, that the proceeds thereof were not placed in the government depository as alleged, which neglect was due to ignorance of the law on the part of the trustee, that certain of his expenditures were made otherwise than by check on such depository countersigned by the referee, and generally denies the rest of the complaining allegations of the petition and explains that the sale of the said stock was for a full cash value therefor, and in compliance with the requirements of the statute, except as to the matter of the non-appraisal of the said stock, should such non-appraisal be shown.

The answer further contends that it is beyond the power of the referee or of this court to accept or authorize the acceptance of the said offer of the petitioner to pay the debts of the bankrupt estate and the accruing costs and expenses, in consideration of the return to him of such stock.

The answer of A. F. Cooke denies the allegations of the petition which relate to complaints of false representations by him to the trustee, and illegality and insufficiency of price, and the petitioner's demand that he return such stock to him in view of his offer, as stated above, and his refusal to make such return; and makes allegations that tend to show the sale to have been fair and reasonable and only entered into by him upon repeated solicitations of the trustee that he purchase the same, there being no demand therefor from others.

The court finds that there is no showing of false or misleading representations on the part of the said A. F. Cooke to the trustee as to the value of the stock in question, and that his attitude in the matter is free from suspicion of inequitable conduct.

I am satisfied that no appraisers were appointed in the bank-

rupt estate before the sale of stock in question and that such stock was sold without appraisal. I need not give in detail my reasons for reaching this conclusion; briefly, although it is a negative proposition, the past referees, with the exception of two who are absent from the Territory, who have had to do with the case, know nothing of such appointment. The trustee who has been in charge of the estate from the beginning, and who was a witness in these proceedings, had nothing to say about such appointment, although it is most likely that he would have known of it if it had been made, and it being obvious that it was for his interest to have mentioned it if he had known of such appointment. The present referee, Thayer, has no knowledge of any appointment of appraisers previous to his incumbency; he did not appoint any previous to the sale in question, and did appoint appraisers in the spring of 1910, a year and a half after this sale. The presumption that appraisers were appointed before Thayer's incumbency, is weak, in that there is no time fixed by statute or rule when appraisers shall be appointed, and such appointment is likely to be delayed until intended sales make it necessary. See Rawlins' testimony, Tr. 208. The importance of an appointment is that it fixes a standard of values, by which the court may measure the reasonableness of the amount realized from sales. For instance a sale for less than 75% of the appraised value of the property sold cannot be sustained without the approval of the court. Bankrupt act, sec. 70b. A failure, however, to appraise bankrupt property before sale, does not necessarily invalidate the sale. *Collier on Bankruptcy* (7th and 8th eds.), 834. If a sale without appraisal brings a reasonable price, it may be confirmed by the court. The sale of this stock brought one dollar a share,—one hundred dollars for the hundred shares. Was that their true value? There is much testimony on this point; evidence of the area and quality of the land of the Palolo Land & Improvement Company, Limited, the debts of the company, the condition and prospects of the land market, etc., etc. It is not easy to estimate values from this kind of testimony when

the market is dull. Speculative estimates are sometimes as good as the more conservative ones for this purpose, especially when they represent a market cash valuation, realizable upon opportunity.

Two witnesses, Mr. Armitage and Mr. Gear, testified that they would have bid at least five dollars a share had these one hundred shares been offered at auction in the fall of 1908. Mr. Armitage is a broker dealing in corporation stock and in 1908 held fifty shares in the Palolo Land & Improvement Company, Limited, which he turned over to Mr. Gear to sell for not less than fifty dollars a share and to make what he could by selling them above that figure. Mr. Gear was a real estate dealer in 1908,—before and after, was acquainted with the lands of the said company and of its financial status, and was dealing in land adjacent thereto. After an examination involving some analysis of conditions of the land market, the standing of the Palolo Land & Improvement Company, Limited, and matters relating to its lands at that time, he said that he would have chanced a bid of five hundred dollars on the hundred shares in the latter part of 1908, if he had had an opportunity at auction. The fact that both of these two witnesses estimated the value of the stock at that time at fifty dollars a share for selling purposes, and that they would have bid five dollars a share at auction if they had had the chance, is a strong showing of the risk that was run in disposing of them at private sale for one dollar a share. General Order XVIII, paragraph 1, requires sales to be at public auction unless otherwise ordered by the court. The referee took the responsibility of a private sale with the result that property that would probably have brought five hundred dollars and which ought to have had the chance of a public auction, was closed out for one hundred dollars at private sale. It would appear that under this showing the failure to have the property appraised must be considered to be fatal to the validity of the sale.

A further point of the complaint is that the referee failed to notify the creditor holding the largest claim. This was one

C. J. Hutchins, to whom was assigned the claim of the Mutual Label & Lithograph Co. of San Francisco, which was in the form of a promissory note. The said Hutchins, as assignee of such note, proved his claim before the then referee,—W. T. Rawlins. Thayer testifies that he sent notices to all creditors who were on the list given in the schedules, which included the said Label & Lithograph Company. But the law requires, with some exceptions not pertinent here, that notices to creditors "shall be addressed as specified in the proof of debt." The proof of this debt contains the following address, "Clinton J. Hutchins of Honolulu, in the Island of Oahu, in said Territory of Hawaii." The referee, Thayer, admits that he sent no notice to Hutchins, and L. A. Thurston,—Hutchins' agent, testified that he had not received any notice of the proposed sale. The witness, E. M. Watson, said, as Hutchins' attorney, that no information was given to the referee that this claim was not Mr. Hutchins' claim.

As the referee sent no notice of the proposed sale as required by General Order XXI, sec. 2, to C. J. Hutchins, and no notice sent to the Label & Lithograph Company reached Mr. Hutchins or his agent, the meeting called to consider the proposed sale was not legally organized and any action of such meeting authorizing the sale was invalid. It follows that the sale so authorized was also invalid.

With this showing, it becomes unnecessary to consider the complaint of the defective character of the record of such meeting. There certainly is an absence of any record of proceedings definitely relating to such sale, for which there is no sufficient explanation. The small pay allowed to referees is no justification for any slighting of their duties. The real inducement is, or should be, the opportunity afforded by the position for becoming acquainted with the complex bankruptcy legislation in all its details and with the proceedings relating thereto. Certainly the records should be so kept that they tell the story of things done with clearness.

The brief of counsel for A. F. Cooke includes the point that

the remedy of the bankrupt is by appeal from the orders of the referee, although his answer contains no intimation of this point. But under the above findings the sale was invalid for reasons outside of the so-called record, claimed by such brief to be conclusive, in which it does not appear that the points of non-appraisal, private sale, failure to notify creditors and inadequacy of price, were raised before, or ruled upon by the referee. The records are so inadequate that were this point to be inquired into, it would be difficult to find any order of sale or of confirmation of sale to appeal from. The causes of the invalidity of the sale are the misfortune of Mr. Cooke and his company but not his fault.

I find that the one hundred shares of stock in question would probably have brought five hundred dollars, if they had been offered at public auction in the latter part of 1908, and that they were worth that figure at that time; and that the disposal of them at private sale without appraisal, or notice to all of the creditors of the proposed sale for one dollar a share, was an invalid sale and must be cancelled.

The Palolo Land & Improvement Company, Limited, may take the shares at such price, paying to the trustee four hundred dollars, the balance of such price, in addition to the one hundred dollars already paid, with interest on such four hundred dollars from the time of the first payment, or if such company should decline this proposition, the trustee shall return to such company the said one hundred dollars paid by it for such shares with interest from the time of such payment, and shall thereupon offer the same for sale at public auction after due advertisement thereof; provided, however, that if, under the further findings herein, the funds of the estate in the hands of the trustee shall come to be sufficient to pay the claims which have been allowed, with interest, and all proper costs and expenses of the administration of the estate, such public sale shall not take place but the said shares shall be returned to the petitioner.

In regard to the other complaints against the trustee, the one

alleging the failure of the trustee to collect the debts due the bankrupt estate whereby they became outlawed, and the objection to the expenditures, are the only matters that are referred to in the prayer, outside of the matter of the sale of the shares, the others receiving little notice in the briefs.

I find that the trustee did not make sufficient effort for the collection of the debts due the bankrupt estate, whereby, and because of the passage of time, they all became outlawed. The evidence on the whole supports the petitioner's contention that all of such debts were collectable, with the exception of the bill against Dr. Camp for $140, which was more than covered by a debt of the bankrupt to him. There is, however, to be considered the costs of litigation in the case of proceedings in the courts for their collection, or of a heavy discount in case of their assignment and, generally, the uncertainty of realizing the aggregate amount of such debts. These debts as listed in the schedule aggregate $458.50; collections to the amount of $15.00 were made, which, with Dr. Camp's bill, makes $155 to be deducted from $458.50, leaving a balance of $303.50. I hold the trustee to be responsible for one-half of this amount, —$151.75.

The objections to the trustee's expenditures are overruled, except as to taxes paid on the bankrupt's real estate for 1907, 1908, 1909 and 1910, amounting to $119.85. The estate appears to have benefited by the delay represented by the years these taxes accrued, in the opportunity of realizing on the bankrupt's interest in the family home and his life insurance policy. As, however, the trustee had funds in his hands from the sale to Cooke in 1908, sufficient for these taxes, and yet allowed them to become delinquent and penalties, interest and advertising costs to accrue amounting to $22.85, his account must be surcharged by that amount.

The case is remanded to the referee for disposition in accordance herewith, with costs as follows: the trustee to pay one-half, Mr. A. F. Cooke to pay one-fourth and the petitioner one-fourth.